# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2524 | **DATE** | 11/21/2000 |
| **CASE TITLE** | HAWKINS vs. TOGO WEST | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/5/00 at 9;45A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment on the Rehabilitation Act claim in Count I of his complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]


NOV 2 2 2000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HAWKINS, | ) | NOV 2 2 2000 |
| Plaintiff, | ) | |
| v. | ) | No. 98 C 2524 |
| | ) | Paul E. Plunkett, Senior Judge |
| TOGO WEST, Secretary of the Department of Veteran Affairs, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Charles Hawkins has sued the Department of Veteran Affairs ("VA") for its alleged violations of the Rehabilitation Act and Title VII. Plaintiff has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment solely on the Rehabilitation Act claim. For the reasons set forth below, the motion is denied.

### Facts

Plaintiff was hired by the VA on April 12, 1989 as a Housekeeping Aide in the Environmental Management Services Division ("EMS") of Hines VA Hospital. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 1-2.) On August 7, 1993, plaintiff injured his right shoulder while operating a floor scrubbing machine. (Id. ¶ 3.) In November 1993, he had surgery on the injured shoulder. (Id. ¶ 4.)

Plaintiff returned to work in March 1994, with his doctor's recommendation of a period of light duty. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.)[1] To accommodate the light duty restriction, the VA eliminated from plaintiff's duties any tasks that would require him to use his right arm in overhead motions or to do repetitive lifting. (Id. ¶ 2.)

By the Fall of 1994, plaintiff apparently found that even the light duty housekeeping tasks were too strenuous for him. On September 21, 1994, his doctor told the VA that he should not lift over ten pounds and should be removed from housekeeping. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶ 6.) On September 26, 1994, plaintiff's doctor reiterated to the VA that plaintiff "could return to a job without heavy lifting" and "should be removed from housekeeping." (Pl.'s LR 56.1(a) Stmt., Hadjuk Dep., Ex., 4, 9/26/94 Letter to Zander from Carroll.) On November 1, 1994, plaintiff's doctor submitted a report to the U.S. Department of Labor Office of Workers' Compensation Programs that said plaintiff had a permanent lifting restriction of not more than twenty pounds. (Id., Ex. 5, 11/1/94 Attending Physician's Report.) The record does not indicate whether a copy of this report was sent to the VA on November 1, 1994 as well.

On March 30, 1995, plaintiff submitted to the VA a written request for accommodation. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶ 9.) The medical records he submitted with his request were: (1) the September 21, 1994 note from his doctor stating that he should do no lifting over ten pounds and should be removed from housekeeping; (2) a June 6, 1994 report from his doctor stating that he

---

[1] Plaintiff did not submit a response to the VA's LR 56.1(b)(3)(B) statement of additional facts that require the denial of summary judgment. He is, therefore, deemed to have admitted them. See LR 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply . . . . All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the statement of the moving party.").

could perform light duty tasks that do not require the use of his injured arm; (3) the November 1, 1994 report from his doctor to the Department of Labor stating that plaintiff had a permanent lifting restriction of no more than twenty pounds; and (4) a second November 1, 1994 report from his doctor to the Department of Labor stating that plaintiff was permanently restricted from doing "overhead or repetitive lifting overhead" with his right arm. (EEOC Investigative Report, Vol. II, C-5 at 000000523, 000000525, 000000559, 000000561.) After he submitted his request for accommodation, plaintiff refused to perform the light duty housekeeping tasks to which he was assigned. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 6.)

On June 9, 1995, Dr. Joan Cummings, Hines Hospital Director, responded to plaintiff's request for accommodation. She stated that the light duty housekeeping tasks to which he was assigned accommodated the restrictions set forth in the medical documentation he had submitted with his request, and instructed him to provide updated medical information if his condition had changed. (Id. ¶ 7.)

On July 24, 1995, plaintiff submitted a certificate from his doctor that recommended plaintiff be placed "on a permanent desk job. No lifting or repetitive use [of the right] arm." (Id. ¶ 8.) A week later, plaintiff was detailed to the Education Service Division of Hines for desk duties in conformance with his doctor's recommendation. (Id. ¶ 9). Plaintiff worked in the Education Service Division until early October 1995, when he had surgery on his injured right shoulder. (Id. ¶ 10.)

After the surgery, plaintiff returned to work on March 11, 1996 with the following recommendations from his doctor: (1) he should do no overhead lifting or lifting in excess of five pounds; (2) he should vary the use of his right arm; and (3) he should have a functional capacity

evaluation. (Id. ¶ 11.) To accommodate these recommendations, the VA detailed plaintiff to the Hines Human Resources Management Service Division. (Id. ¶ 12.) The VA told plaintiff that the detail to Human Resources was temporary, pending a search for a permanent position that would accommodate his disability. (Id. ¶ 15.) Though he was working in Human Resources, plaintiff remained on the staff roster of the Environmental Management Services Division, where he had originally worked as a Housekeeping Aide. (Id. ¶ 13.)

On April 5, 1996, plaintiff's doctor performed a work evaluation and concluded that he was "capable of functioning in the light duty work level as established by the U.S. Department of Labor." (EEOC Investigative Report, Vol. II, C-9, 4/5/96 Work Evaluation at 000000613.)

On July 3, 1996, the director of the Environmental Management Services Division asked Human Resources to remove plaintiff from his staff roster because plaintiff was unable to perform housekeeping duties. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 14.)

On July 9, 1996, the Chief of the Hines Human Resources Management Service submitted plaintiff's medical restrictions to the staffing section and directed it to "take the necessary steps to determine if there is any position at this hospital, in which Mr. Hawkins can be placed." (EEOC Investigative Report, Vol. II, C-7, 7/9/96 Mem. to Ubick from Boettcher at 000000587.)

On September 18, 1996, the staffing section attempted to locate a position suitable for plaintiff from a computer print out of positions available at Hines. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 18.) The print out was not, however, given to plaintiff. (Pl.'s LR 56.1(a) Stmt., Hadjuk Dep. at 82.)

One of the positions the staffing section considered for plaintiff was Motor Vehicle Operator. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 19.) The staffing section concluded, however, that plaintiff did not

meet the physical requirements for the job, which required, among other things, lifting of heavy objects. (Id.)

On September 30, 1996, plaintiff was given notice of proposed termination because he was physically unable to perform the duties of a Housekeeping Aide and the VA's job search was unsuccessful. (EEOC Investigative Report, Vol. II, C-14, 12/27/96 Letter to Reina from Torphy.) Plaintiff was terminated on January 17, 1997. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶ 29.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Plaintiff alleges that the VA violated the Rehabilitation Act by failing to honor his request for an accommodation in the form of job reassignment. (Compl., Count I.) To prevail on this claim, plaintiff must show that: (1) he is disabled; (2) the VA was aware of his disability; (3) he is otherwise qualified for the job; and (4) his disability caused the adverse employment action. Foster

v. Arthur Andersen, LLP., 168 F.3d 1029, 1032 (7th Cir. 1999). There is no dispute that plaintiff is disabled, the VA was aware of his disability and he was discharged because of it. (Def.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 9, 11, 29 .) The VA contends, however, that there is a triable issue of fact on the third element: whether plaintiff was otherwise qualified for the job.

Plaintiff is qualified, within the meaning of the Rehabilitation Act if he "[m]eets the experience or education requirements . . . of the position in question" and "can perform the essential functions of the position with or without reasonable accommodation." 29 C.F.R. § 1614.203(a)(6). Plaintiff has the education and experience required of a Housekeeping Aide, but because of his disability, is unable to perform the essential functions of that position. Therefore, he requested a reasonable accommodation in the form of reassignment to another position, an accommodation specifically contemplated by the Act. See 29 C.F.R. § 1614.203(g) ("When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.") The VA, he contends, did not even attempt to locate another position for him, thereby committing two per se violations of the Act: (1) failing to engage plaintiff in an interactive process to determine an appropriate accommodation for him; and (2) failing to reasonably accommodate him by reassigning him to another position.

As an initial matter, even if the VA had refused to engage in an interactive process to determine an appropriate accommodation for plaintiff, that would not, by itself, violate the Rehabilitation Act. In the words of our court of appeals: "a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000).[2] Rather, "a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." Id. Thus, even if it were true, plaintiff's allegation that the VA did not engage in an interactive process would be probative of his failure to accommodate claim, but, standing alone, would not violate the Rehabilitation Act.

Moreover, viewed favorably to the VA, the record suggests that it both engaged in an interactive process and attempted to identify other vacant, funded positions for which plaintiff was qualified. The interactive process envisioned by the Rehabilitation Act is an "informal" one that identifies "the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3) (ADA guidelines). In some cases, the employer will have to take a step-by-step, "problem solving approach" to determining an appropriate accommodation. See 29 C.F.R. App. 1630.9. In others, "the appropriate reasonable accommodation [is] so obvious . . . that it may not be necessary to proceed in this step-by-step fashion." Id. Plaintiff's accommodation request falls into the latter category. His "precise limitations" were clearly set forth in the July 24, 1995 certificate to the VA

---

[2]Though Rehling is an ADA case, its reasoning applies to the Rehabilitation Act as well. See 29 U.S.C. § 794(d) ("The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . .").

from his doctor, which stated that he should placed "on a permanent desk job. No lifting or repetitive use [of the right] arm." (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 8.) The only possible accommodation to these restrictions, and the only accommodation plaintiff requested, is reassignment to a job that did not require any lifting or repetitive use of his right arm. The next step in the process is obvious: compare the job descriptions of the available, funded vacancies at Hines with plaintiff's education, experience and known physical limitations. Though plaintiff disputes it, the VA contends that it took that step and was unable to identify any positions for which plaintiff was qualified. (See Def.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 17-22.) Plaintiff has adduced no evidence that he was, in fact, qualified for any vacant, funded position at Hines or that his personal involvement in the accommodation process would otherwise have changed its result. Because there is evidence in the record from which a reasonable jury could conclude that the VA made a good faith attempt to accommodate plaintiff's disability, plaintiff is not entitled to judgment as a matter of law on his failure to accommodate claim.[3]

---

[3]Plaintiff also contends that the VA violated the Rehabilitation Act by refusing to continue his light duty assignment in the Human Resources Management Division. This contention has no merit. The guidelines require employers to "offer to reassign [an otherwise qualified disabled employee] to a *funded vacant* position located in the same commuting area . . . ." 29 C.F.R. § 1614.302(g) (emphasis added). It is undisputed that plaintiff's light duty assignment with the Human Resources Division was not a vacant, funded position. (EEOC Investigative Report, Vol. I, B-6, Wenzbauer Aff. at 9.) Thus, the VA had no obligation to maintain plaintiff's assignment with Human Resources.

## Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment on the Rehabilitation Act claim in Count I of his complaint is denied.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: _11-21-00_