Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2524 | **DATE** | 6/21/2002 |
| **CASE TITLE** | CHARLES HAWKINS vs. ANTHONY PRINCIPI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: There is no genuine issue of material fact on any of the claims plaintiff, Charles Hawkins, asserts against defendant is entitled to judgment as a matter of law. Defendant, Anthony Principi's motion for summary judgment is, therefore, granted. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 2 4 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 91 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUN 21 PM 12:42 | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES HAWKINS,            )
                            )
        Plaintiff,           )
                            )
    v.                       )   No. 98 C 2524
                            )   Paul E. Plunkett, Senior Judge
ANTHONY PRINCIPI, Secretary of the  )
Department of Veteran Affairs,       )
                            )
        Defendant.           )   JUN 2 4 2002

## MEMORANDUM OPINION AND ORDER

Charles Hawkins has sued the Department of Veteran Affairs ("VA") for its alleged violations of the Rehabilitation Act, 29 U.S.C. § 794 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. The case is before the Court on defendant's Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts[1]

Plaintiff was hired by the VA in 1989 as a housekeeping aide in the Environmental Management Service ("EMS") of Hines Hospital. (Def.'s LR 56.1(a) Stmt. ¶ 1.) On August 7, 1993, plaintiff injured his right shoulder. (Id. ¶ 6.) In November 1993, he had surgery on the injured shoulder. (Id. ¶ 7.)

Plaintiff returned to work in March 1994, with his doctor's recommendation of a period of light duty. (Id. ¶ 8.) Defendant says it accommodated plaintiff's light duty restriction by eliminating

---

[1] Unless noted otherwise, these facts are undisputed.

tasks that would require him to use his right arm in overhead motions or do repetitive lifting. (Id. ¶ 9.) Plaintiff says he was required to perform all of the duties of a housekeeping aide, despite his restriction. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 9.)

On May 31, 1994, plaintiff's surgeon released him to work without any restrictions. (Def.'s LR 56.1(a) Stmt. ¶ 10.)

On June 16, 1994, another doctor, Charles Carroll, certified that plaintiff could perform light duty work that did not involve lifting more than twenty-five pounds. (Id. ¶ 11.)

On September 21, 1994, Dr. Carroll wrote another note that said plaintiff should not lift more than five to ten pounds and should be removed from housekeeping. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 12.)

On November 1, 1994, Dr. Carroll completed an attending physician's report that said plaintiff could not lift more than twenty pounds, could climb ladders for only thirty minutes per day, could not reach above his shoulder, and could not do "overhead or repetitive lifting overhead [right arm]." (Def.'s LR 56.1(a) Stmt. ¶ 12.) On November 23, 1995, Dr. Carroll advised defendant that plaintiff was permanently restricted to light duty. (Id. ¶ 14.)

On February 27, 1995, plaintiff filed his first EEO complaint, claiming that defendant had harassed and discriminated against him on the basis of his race and disability. (Pl.'s Tr. Ex. 92.)

In March 1995, plaintiff told his supervisor that his physical limitations prevented him from performing the housekeeping aide duties. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 15.) At the end of that month, plaintiff submitted a written request for accommodation to the Medical Director of Hines Hospital. (Id. ¶ 16.)

On April 29, 1995, Dr. Carroll wrote another note that said plaintiff could perform light duty, but "[n]o heavy lifting, no overhead activity, [and] no lifting over 25 lbs." (Def.'s LR 56.1(a) Stmt. ¶ 15.)

On June 9, 1995, the Hines Hospital Medical Director responded to plaintiff's request for accommodation. She said that the light duty housekeeping tasks to which he was assigned accommodated the restrictions set forth in the medical documentation he had submitted with his request and instructed him to provide updated medical information if his condition had changed. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 18.)

On July 24, 1995, Dr. Carroll wrote another note that said recent physical examinations indicated that plaintiff could neither lift nor make repetitive use of his right arm and recommended that he be placed in a permanent desk job. (Id. ¶ 19.)

A week later, plaintiff was temporarily detailed to the Education Service Division of Hines for desk duties in conformance with his doctor's recommendation. (Id. ¶ 21). Plaintiff worked in the Education Service Division until early October 1995, when he had a second operation on his shoulder. (Id. ¶ 22.)

In early September 1995, plaintiff filed his second EEO complaint, claiming that defendant retaliated against him for his earlier complaints of discrimination by withholding wages due him. (Pl.'s Tr. Ex. 93.)

When plaintiff returned to work on March 11, 1996 after his second surgery, his doctor recommended that he: (1) do no overhead lifting or lift in excess of five pounds; (2) vary the use of his right arm; and (3) have a functional capacity evaluation. (Def.'s LR 56.1(a) Stmt. ¶¶ 22-23.) To accommodate these recommendations, the VA detailed plaintiff to the Human Resources

Management Service Division of Hines Hospital. (Id. ¶ 23.) Though he was working in human resources, plaintiff remained on the payroll of EMS, where he had originally worked as a housekeeping aide. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 24.)

On April 5, 1996, plaintiff's doctor performed a work evaluation on him and concluded that he was "capable of functioning in the light duty work level as established by the U.S. Department of Labor." (Def.'s LR 56.1(a) Stmt. ¶ 28.)

On July 9, 1996, the Chief of the Hines Human Resources Management Service submitted plaintiff's medical restrictions to the staffing section and directed it to "take necessary steps to determine if there is any position at this hospital, in which Mr. Hawkins can be placed." (Id. ¶ 30.)

On September 18, 1996, the staffing section made a computer print out of positions available at Hines. (Id. ¶ 31.) The print out, however, was not given to plaintiff. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 29.)

One of the positions the staffing section considered for plaintiff was motor vehicle operator. (Def.'s LR 56.1(a) Stmt. ¶ 32.) The staffing section concluded, however, that plaintiff did not meet the physical requirements for the job, which required, among other things, lifting of heavy objects. (Id.)

On January 13, 1997, plaintiff filed a third complaint of discrimination, claiming that defendant had harassed and discriminated against him on the basis of his race and disability and had retaliated against him for his prior complaints of discrimination. (Pl.'s Tr. Ex. 94.)

Plaintiff was terminated on January 17, 1997 because, defendant says, he could not perform the essential functions of the housekeeping aide position and there were no other positions available at Hines for which he was qualified. (Def.'s LR 56.1(a) Stmt. ¶ 43.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

### Disability Discrimination

Plaintiff alleges that the VA violated the Rehabilitation Act by failing to accommodate his disability by reassigning him to another job. (Compl., Count I.) To make a prima facie case on this claim, plaintiff must show that: (1) he is disabled; (2) defendant was aware of his disability; and (3) he is a qualified individual who, with or without a reasonable accommodation, could perform the essential functions of the position at issue. McPhaul v. Board of Comm'rs of Madison County, 226 F.3d 558, 563 (7th Cir. 2000), cert. denied, 532 U.S. 921 (2001) (ADA case); 29 U.S.C. § 794(d) (stating that the standards applicable to employment claims under the ADA apply to employment claims under the Rehabilitation Act).

Plaintiff is disabled[2] within the meaning of the Rehabilitation Act, if: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of having such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102; 29 C.F.R. § 1614.203(a)(1). Plaintiff says he has a physical impairment, an injured right shoulder, but he does not identify the major life activity that his impairment substantially limits. Of the major life activities identified by the EEOC, only performing manual tasks and working are even arguably applicable. See 29 C.F.R. §§1614.203(a)(3), 1630.2(i) (stating that major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

Plaintiff's injury substantially limits his performance of manual tasks only if it "prevents or severely restricts [him] from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky, Inc., v. Williams, 122 S. Ct. 681, 691 (2002). A plaintiff who shows nothing more than an inability "to perform the tasks associated with [his] specific job" is not substantially limited in the life activity of performing manual tasks. Id. at 693.

It is undisputed that plaintiff's impairment rendered him unable to perform some of the tasks associated with the housekeeping aide position. According to Williams, however, that is not enough. To survive this motion, plaintiff must produce facts that suggest his impairment prevents or severely restricts him from performing such daily activities as bathing, brushing his teeth and doing household chores. Id. Plaintiff has adduced no such evidence. Accordingly, his impairment does not substantially limit the major life activity of performing manual tasks.

---

[2]Though defendant conceded that plaintiff was disabled in its brief in opposition to plaintiff's motion for partial summary judgment, the Court declines to treat that statement, which was not made in a pleading, as a judicial admission.

Whether plaintiff's impairment substantially limits the major life activity of working is a closer question. It does so only if it significantly restricts his "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). It is undisputed that plaintiff's shoulder injury limits him to jobs in the "light duty work level as established by the U.S. Department of Labor," that involve "exerting up to 20 pounds of force occasionally or up to 10 pounds of force frequently or a negligible amount of force constantly to move objects." (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 28.) According to the EEOC's Interpretative Guidance, that limitation precludes plaintiff from performing the class of heavy labor jobs:

> An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes . . . . For example, an individual who has a back condition that prevents [him] from performing any heavy labor job would be substantially limited in the major life activity of working because [his] impairment eliminates his . . . ability to perform a class of jobs.

29 C.F.R. § 1630 App.

Our court of appeals reached a similar conclusion in Cochrum v. Old Ben Coal Co., 102 F.3d 908 (7th Cir. 1996). The plaintiff in that case had an injury that prevented him from doing overhead work and heavy lifting and from pulling or pushing from his body, restrictions that the lower court held, as a matter of law, did not substantially limit his ability to work. The Seventh Circuit disagreed, saying:

> The physical restrictions Cochrum's physician placed upon him – no overhead work, heavy lifting or pulling and pushing out from his body – might apply to a broad range of jobs, and are more than job specific. As with the example of the bad back given in the regulations, Cochrum's shoulder injury could disqualify him from any position at the mine, or in related work such as construction. . . . [G]iven the breadth of

> [Cochrum's] . . . restrictions, a reasonable jury could conclude that Cochrum's
> shoulder impairment does substantially limit his ability to work.

Id. at 911; see DePaoli v. Abbott Labs., 140 F.3d 668, 673 (7th Cir. 1998) (impairment that prevented plaintiff from "virtually any employment that required repetitive motions of her right hand" could substantially limit ability to work).

As defendant points out, however, the reasoning of those cases is undercut by more recent authority from our court of appeals. In Contreras v. Suncast Corp., 237 F.3d 756 (7th Cir.), cert. denied, 122 S. Ct. 62 (2001), the court held that a forty-five pound lifting restriction, a ban on strenuous work and a ban on driving a forklift for more than a few hours per day do not "constitute a significant restriction on one's capacity to work." Id. at 763. Moreover, the court cited with approval to cases from other circuits that hold, as a matter of law, that a lifting restriction of twenty-five pounds or more does not substantially limit the ability to work. Id.

The Contreras court acknowledged the tension between its holding and those of Cochrum and DePaoli, but distinguished those cases by saying:

> [W]hat is significant about [those] cases is the court's emphasis on the breadth of the restrictions placed on the plaintiffs and their doctors' recommendations concerning how their respective injuries would affect their ability to obtain other employment. . . . In contrast, Contreras's restrictions are quite specific and he has offered no evidence – other then the restrictions themselves – to show that his back injury limits his ability to engage in a class of jobs.

Id. at 763 n.5.

The line drawn by the Contreras court is hardly a bright one. Fortunately, we need not decide whether this case is controlled by Contreras, on the one hand, or by Cochrum and DePaoli, on the other, because even if we assume that plaintiff is disabled, there is no evidence that he is an otherwise qualified individual, the third element of his prima facie case. McPhaul, 226 F.3d at 563.

Plaintiff is a qualified individual if he has the "requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires, and . . . with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); see 29 C.F.R. § 1614.203(a)(6). Though plaintiff has the education and experience required of a housekeeping aide, it is undisputed that he cannot perform the essential functions of that job. Thus, the only way he could be a "qualified individual" is if defendant accommodated his disability by transferring him to another vacant position for which he was qualified. See Gile v. United Airlines, Inc., 95 F.3d 492, 497 (7th Cir. 1996) (noting that "the Rehabilitation Act incorporates the ADA's definition of reasonable accommodation, which recognizes reassignment to a vacant position as a potential accommodation"); 29 C.F.R. § 1614.203(g) (stating that federal employer must reassign nonprobationary employee whose disability renders him unable to perform the essential functions of his current position to another vacant, funded position).

There is no evidence, however, that defendant had a vacancy for which plaintiff was qualified.³ It is undisputed that there were vacant clerk typist, medical records technician, file clerk, secretary, time and attendance clerk and claims clerk positions at Hines when plaintiff became disabled, but plaintiff has offered no evidence to suggest that he was qualified for any of them. (See Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 29; Def.'s LR 56.1(a) Stmt., Exs. 18, 23; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 3.) Moreover, plaintiff contends that he was qualified for a job as a librarian, a police officer and a telephone operator (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 36), but there is no evidence that any of those

---

³Though plaintiff says defendant could have trained him for other positions, the Rehabilitation Act "does not require employers to offer special training to disabled employees." Williams v. United Ins. Co. of Am., 253 F.3d 280, 282 (7th Cir.), cert. denied, 122 S. Ct. 553 (2001).

positions were available when he became disabled.[4] Absent such evidence, plaintiff has not demonstrated that he was a qualified individual with a disability, the last element of his prima facie case. Because plaintiff has not made a prima facie case on his Rehabilitation Act claim, it must be dismissed.

**Race Discrimination**

Plaintiff also claims that defendant discharged him because of his race in violation of Title VII. To defeat defendant's motion on this claim, plaintiff must either present some direct evidence of defendant's discriminatory intent or comply with the indirect, burden-shifting method of proof articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472 (7th Cir. 1993).

As direct evidence of discrimination, plaintiff offers a list of the employees discharged from Hines on the basis of disability from the period January 1995 through August 1997 identified by race. (Pl.'s Tr. Ex. 102.) That list, which covers various departments at Hines, does not identify the racial makeup of any of the departments or the names of the people who made the termination decisions. Absent that information, the list does not constitute direct evidence of defendant's discriminatory intent. See Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997) (stating that direct evidence "relate[s] to the motivation of the decisionmaker responsible for the contested decision") (internal quotation marks and citation omitted).

---

[4] Even if they were, the record establishes that plaintiff was, in fact, not qualified for the police officer and librarian positions. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 36-38, 40-42.)

-10-

Having no direct evidence of discrimination, plaintiff must satisfy the McDonnell Douglas burden-shifting method of proof if he is to defeat this motion. To do so, he must first establish a prima facie case of discrimination. Von Zuckerstein, 984 F.2d at 1472. If plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decisions. Id. If defendant carries its burden, plaintiff must show that the proffered reasons for the challenged employment decision are merely a pretext. Id.

To establish a prima facie case on his discrimination claim, plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the job or was meeting defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) defendant treated similarly situated employees outside the protected class more favorably. Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1035 (7th Cir. 1999). There is no dispute that plaintiff could not perform the functions of the housekeeping aide position and there is no evidence that he was qualified for any other available position. Thus, he has not satisfied the second element of his prima facie case.

Nor has he satisfied the last, which requires evidence that defendant treated a similarly situated, non-black employee more favorably. Though plaintiff says defendant treated Mike Turray and Ted Kachild, two white employees who were also disabled, more favorably than he, there is no evidence that those men were situated similarly to plaintiff. Employees are situated similarly only if they are "directly comparable . . . in all material respects." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). There is no evidence that Messrs. Turray and Kachild: (1) were housekeeping aides, like plaintiff; (2) reported to the same supervisors as plaintiff; (3) suffered injuries that left them unable to perform the housekeeping aide position, like plaintiff; or (4) had the

same education, work experience, skills and training as plaintiff. Because plaintiff has not offered any facts from which we can infer that defendant accorded more favorable treatment to a similarly situated non-black employee, he has not made a prima facie case of race discrimination.

Plaintiff's failure to make a prima facie case dooms his discrimination claim. Defendant's motion for summary judgment on plaintiff's Title VII race discrimination claim is, therefore, granted.

**Retaliation**

Plaintiff also claims that defendant discharged him in retaliation for his complaints about discrimination. To make a prima facie case on this claim, plaintiff must show that he engaged in protected activity, he suffered an adverse employment action and there is a causal link between the two. Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1035 (7th Cir. 1998). There is no dispute that plaintiff filed EEO complaints on February 27, 1995, September 8, 1995 and January 13, 1997, so the first element is met. There is also no dispute that he was subsequently discharged, so the second element is met. The only question is whether there is any evidence to suggest that there is a causal link between the complaints and the discharge.

Plaintiff was not discharged until January 17,1997, nearly two years after he filed the first EEO complaint and sixteen months after he filed the second. Standing alone, that temporal sequence of events does not support an inference of retaliation. Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999)("A substantial time lapse between the protected activity and the adverse employment action is counter-evidence of any causal connection.") (internal quotation marks and citation omitted).

The only other evidence plaintiff offers to connect his first two complaints to his discharge are two requests for his termination made by his EMS supervisors. The initial request was made by Eric Jennings in July 1995. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 25.) Mr. Jennings' explanation for the request, that plaintiff's continued presence on the EMS payroll prevented him from hiring someone to perform the housekeeping job that plaintiff could not, does not suggest retaliation. Nor does the timing of the request, which was made five months after plaintiff filed his first EEOC complaint.

The second request was made by James Elium on September 15, 1995, one week after plaintiff filed his second EEO charge. (Id. ¶ 26.) The timing of that request might suggest retaliation, if there were evidence that Mr. Elium knew about plaintiff's EEO activity. There is not. Absent such evidence, there is no basis for inferring that Mr. Elium's request to terminate was related to plaintiff's EEO complaints.

In short, plaintiff has adduced no evidence to suggest that his discharge was causally connected to his first two EEO complaints. Those complaints cannot, therefore, support a retaliation claim.

That leaves plaintiff's last EEOC complaint, which he made only four days before he was discharged. The timing of those events, by itself, is sufficient to raise an inference of causation. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 797 (7th Cir. 1997) (noting that an inference of causation can arise from timing alone if the protected activity and the adverse action are separated by only a few days). Thus, plaintiff has made a <u>prima facie</u> case of retaliation with respect to his last complaint of discrimination.

Plaintiff still cannot defeat this motion, however, because he has no evidence to suggest that defendant's proffered reasons for its actions, plaintiff's inability to perform the housekeeping aide

-13-

position and the lack of other vacant positions for which he was qualified, are pretextual. Plaintiff admits that he could not perform the housekeeping aide job and he has no evidence that Hines had any vacancies in any other job for which he was qualified. Even if, as plaintiff contends, defendant had no written accommodation policy and was lackadaisical in handling accommodation requests, those facts do not suggest that the reasons defendant proffered for discharging him are untruthful. Because plaintiff has not created a genuine issue of fact on whether defendant's reasons for discharging him are pretextual, defendant's motion for summary judgment on his retaliation claim is granted.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on any of the claims plaintiff asserts against defendant and defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is, therefore, granted. This is a final and appealable order.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: June 21, 2002